IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PAULA BENTLEY, | ) | CASE NO. 1:08 CV 187 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

This is an action for judicial review of the final decision of the Commissioner of Social Security denying the application of the plaintiff, Paula Bentley, for disability insurance benefits. The parties have consented to magistrate judge's jurisdiction.

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Bentley had severe impairments consisting of degenerative disc disease and radiculopathy of the left leg.[1] The ALJ made the following finding regarding Bentley's residual functional capacity:

> Upon careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the exertional demands of light work, or work which requires maximum lifting of twenty pounds and frequent lifting of ten pounds. Because of symptoms related to radiculopathy, the claimant is able to stand and/or walk for 2 hours in an 8-hour workday and sit for 6 hours in an 8-hour workday. Because of subjective complaints of pain and findings of decreased range of motion in her back, claimant has postural limitations restricting stooping, crouching,

---

[1] Transcript ("Tr.") at 18.

>crawling and climbing to an occasional basis, and because of complaints associated with her right wrist, hand and fingers, she is able to perform fingering activity on an occasional basis. Occasionally is defined as occurring from very little up to one-third of the time, or approximately 2 hours in an 8-hour workday. Frequent defined as occurring from one-third to two thirds of the time or approximately 6 hours in an 8-hour workday.[2]

Given that residual functional capacity, the ALJ determined that Bentley was unable to perform any past relevant work.[3]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing incorporating the above-quoted residual functional capacity, the ALJ decided that a significant number of jobs existed locally and nationally that Bentley could perform.[4] He, therefore, found Bentley not under a disability.

Bentley asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Bentley presents two issues for decision on judicial review. First, did the ALJ err by failing to recognize the severe mental impairment at step two of the sequential evaluation process? Second, does the residual functional capacity finding, which includes no limitations related to a mental impairment, have the support of substantial evidence in the administrative record?

I conclude that the ALJ's finding of no disability is supported by substantial evidence and, therefore, must be affirmed.

---

[2] *Id.* at 20.

[3] *Id.* at 22.

[4] *Id.* at 22-23.

## Analysis

**1.    Standard of review**

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[5]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**2.    Severe impairments**

Bentley first complains that the ALJ erred by not finding that she had a mental impairment at step two of the sequential evaluation process. Under the Sixth Circuit's decision in *Maziarz v. Secretary of Health and Human Services*,[6] the failure to properly characterize an impairment as a severe impairment at step two has no consequence where,

---

[5] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[6] *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

as here, the ALJ moves on to complete the sequential evaluation analysis at steps four or five. The issue is whether the ALJ properly evaluated Bentley's work-related limitations at step four. I will discuss that issue below.

**3.     Work-related limitations related to Bentley's mental impairment**

The ALJ did not recognize any mental impairment as severe.[7] The residual functional capacity finding includes no limitations related to a mental impairment.[8] Nevertheless, during the hearing, counsel for Bentley asked the vocational expert if his opinion as to significant number of jobs would change if substantial mental limitations were added, such as simple, routine, low-stress, with minimal and very superficial interaction, minimal production goals, and quotas.[9] The vocational expert responded that it would not change his opinion.[10] Counsel then added the additional limitation of being off task on an occasional basis.[11] The vocational expert responded that there would be no work available with that limitation.[12]

This is the critical mass of this case. Both the Commissioner and Bentley point to the records of the treating psychological counselor, Sora Vigorito, in support of their positions.

---

[7] Tr. at 18-19.

[8] *Id.* at 20.

[9] *Id.* at 414-15.

[10] *Id.* at 415.

[11] *Id.*

[12] *Id.*

In February of 2003, a consulting psychologist, Frederick Leidal, Psy.D., opined that Bentley was too unstable for full-time employment and needed psychiatric stabilization before any retraining could be attempted.[13] At the time and thereafter, Bentley was counseling with Vigorito.[14]

Vigorito completed a mental functional capacity assessment for the state agency in May of 2003 after having seen Bentley for six months.[15] In that assessment, she reported that Bentley was focused and can remain focused and did not demonstrate severe symptoms of depression or anxiety.[16] She found her long-term memory, abstract reasoning, fund of information, average intelligence, and short-term memory normal.[17]

She rated Bentley as able to remember and understand and follow directions; able to maintain attention; and able to sustain concentration, focus, and complete assign tasks.[18] Finally, she found no deficiencies in social interaction or adaptation.[19] She concluded that Bentley could cope with stress as long as she received supportive counseling.[20]

---

[13] *Id.* at 284.

[14] *Id.* at 301.

[15] *Id.* at 301-03.

[16] *Id.* at 301.

[17] *Id.*

[18] *Id.* at 302.

[19] *Id.*

[20] *Id.*

The ALJ credited Vigorito's opinion over that of Dr. Leidal because she had the opportunity to observe and assess Bentley's overall functioning over a period of time, whereas he gave Dr. Leidal's opinion less weight because it was contradicted by Bentley's ability to pursue vocational training and higher education.[21]  Having reviewed Dr. Leidal's report and Vigorito's notes and assessment carefully, I must conclude that a reasonable mind might accept this evidence as adequate to support the conclusion that Bentley could perform the jobs identified by the vocational expert, particularly in light of that expert's testimony that she could perform those jobs even with additional non-exertional limitations proposed in questioning by Bentley's counsel.[22]  Substantial evidence, therefore, supports the no disability decision.

As the Sixth Circuit observed in *Buxton v. Halter*, there exists a "zone of choice" within which the Commissioner can act without interference from the reviewing court.[23]  The concept of a "zone" implies that evidence having varying cumulative weight may suffice to provide substantial evidence supporting the Commissioner's decision.  On one end of the zone, the objective medical evidence may be such as to convince the reviewing court that, even under the *de novo* standard, the Commissioner decided the case correctly.  But, on the other end of the zone, the evidence may be less compelling.  Such evidence may cause a reviewing court to question whether it would have decided the case in the same way under

---

[21] *Id.* at 22.

[22] *Id.* at 414-15.

[23] *Buxton*, 246 F.3d at 772.

the *de novo* standard.  Nevertheless, if the court concludes that a reasonable mind might accept the evidence as adequate to support the Commissioner's conclusion, it must affirm the Commissioner.

Here, as discussed above, the record does contain some evidence that Bentley had limitations caused by her mental condition.  The evidence also contains, however, evidence supporting a finding that even taking into consideration certain limitations flowing from a mental impairment, Bentley retained the residual functional capacity to perform jobs that existed in significant numbers nationally and locally.  The Commissioner's decision, therefore, falls within the zone of choice within which this Court must affirm.

## Conclusion

Substantial evidence supports the finding of the Commissioner that Bentley had no disability.  Accordingly, the decision of the Commissioner denying Bentley disability insurance benefits is affirmed.

IT IS SO ORDERED.


Dated:  December 16, 2008                  s/ William H. Baughman, Jr.
                                                                   United States Magistrate Judge